IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Western Towboat Company | |
| *versus* | Civil Action No.: |
| National Oceanic and Atmospheric Administration | |
| *and* | |
| U.S. Environmental Protection Agency | |

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

For its Verified Complaint against the National Oceanic and Atmospheric Administration and the U.S. Environmental Protection Agency, Plaintiff Western Towboat Company alleges:

**BRIEF STATEMENT OF THE CASE**

1.      This case seeks injunctive and declaratory relief against two federal agencies related to their putative Orders to Plaintiff to participate in an improperly constituted proceeding before an Administrative Law Judge of the wrong agency.  Specifically, the National Oceanic and Atmospheric Administration (NOAA) arbitrarily referred its own civil penalty demand to the U.S. Environmental Protection Agency (EPA), which in turn appointed an EPA Administrative Law Judge to preside over the proceeding.  This proceeding also was not commenced within the five-year period of the applicable statute of limitations.  28 U.S.C. § 2462.  Last, NOAA violated the Due Process clause by seeking joint-and-several civil penalties without making any individualized assessment of penalties, made worse when NOAA settled with everyone but Plaintiff, and then persisted in seeking the full penalty against it.

## JURISDICTION AND VENUE

2.     This case arises under the Fifth Amendment's Due Process clause; under the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 *et seq.*; under the National Marine Sanctuaries Act, 16 U.S.C. § 1437; and under NOAA's Civil Penalties Procedures, 15 C.F.R. §§ 904.100-904.108, Hearing Procedures, 15 C.F.R. §§ 904.200 *et seq.*, and MBNMS Regulations, 15 C.F.R. § 922.130 *et seq*.

3.     This Court has jurisdiction under 28 U.S.C. § 1331, as this cause of action arises under the U.S. Constitution, laws, and regulations of the United States, and therefore presents a federal question.  This Court has jurisdiction to issue declaratory relief under 28 U.S.C. § 2201.

4.     Further, 5 U.S.C. § 703 allows for declaratory and injunctive relief in an action for judicial review brought against the United States, an agency by its official title, or the appropriate officer. "Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement."

5.     This Court is the proper venue for this action, pursuant to 28 U.S.C. § 1391(e), because a substantial part of the events and omissions of the Government that give rise to this claim occurred within Washington, D.C., because the U.S. Environmental Protection Agency Office of Administrative Law Judges is located within Washington, D.C., and because the NOAA Enforcement Section Headquarters is located just outside of Washington, D.C.

## PARTIES

6.     Western Towboat is a family-owned small business engaged in commerce by sea.

7.     The National Oceanic and Atmospheric Administration (NOAA) is an agency of the United States, under the U.S. Department of Commerce.

8.     The U.S. Environmental Protection Agency (EPA) is an agency of the United States, under the U.S. Department of the Interior.

## FACTUAL BACKGROUND

9.     This case arises out of allegations by NOAA that four different companies, including Plaintiff Western Towboat Company ("Western"),[1] violated agency regulations when Western's towboat cut its tow free, during an emergency, near the Monterey Bay National Marine Sanctuary.

10.     The towboat was towing a retired drydock down the West Coast when, on October 25, 2016, it began to encounter heavy seas.  During the overnight watch, the towboat crew observed their tow begin to take on water and list to one side.  This tow had been surveyed and certified as tight and oil-free before delivery to Western for towage.  The Coast Guard approved the tow plan.

11.     When Western reported the situation to the Coast Guard, the Government imposed "operational control" over the tug and tow.[2]  The Coast Guard issued a "Captain of the Port Order" so that the towboat could proceed toward Monterey Bay, under specified conditions, to be dewatered and repaired.  This necessarily entailed a transit of the Monterey Bay National Marine Sanctuary (MBNMS).

12.     Under U.S. Coast Guard operational control, the tug proceeded from its position at sea toward Monterey Bay, California at a cautious speed of about 2-4 knots.  The vessel and the Coast Guard remained in close contact because, should the tow sink, the towboat could be pulled underwater, with a loss of all hands.

---

[1] The companies are Puget Sound Commerce Center, Inc., Vigor Marine, LLC, Amaya Curiel Corp, and Plaintiff herein, the family-owned Western Towboat Co.  Exh. A.

[2] The Coast Guard's records from October 26, 2016 state:  "AT 0132T ON 26OCT16, OPERATIONAL CONTROL IMPOSED ON THE OCEAN RANGER."

13.     On October 26, 2016, before reaching refuge in Monterey Bay, the tow's flooding did progressively worsen.  In order to save his vessel and crew, the towboat captain had to cut the tow-line.[3]  Just minutes later, the oil-free tow sank, and eventually came to rest on the muddy bottom just within the MBNMS, in 3,000 feet of water.  NOAA alleges that this mud landing killed marine invertebrates on the day of its sinking.

14.     On October 18, 2021, an Enforcement Attorney from NOAA's Enforcement Section issued a Notice of Violation and Assessment (NOVA).  This opened by stating that an "investigative report prepared by the NOAA Office of Law Enforcement regarding events that occurred on October 26, 2016, and continuing thereafter, has been referred to this office for prosecution."  Exh. A at 1.

15.     The NOVA closed by stating the Enforcement Office's "finding" that the four Respondents violated "the National Marine Sanctuaries Act, and/or [NOAA] regulations," and "that a just and reasonable disposition for the violations is a civil monetary penalty of $5,169,978 as of October 18, 2021."  Exh. A at 7.

16.     The NOVA did not make any individualized assessment as to each Respondent, but only made one assessment as to all four Respondents jointly and severally.

17.     Almost all of the recommended penalty was based on a multiplier for "daily" violations, notwithstanding the fact that marine invertebrates can die but one death.  *See, e.g.*, Exh. A at 5 (multiplying a $2,250 per day assessment by a five-year period).

---

[3] As stated in NOAA's own Notice of Violation, Exh. A at 4 (emphasis added):  "During the course of this voyage, the tug and its tow encountered rough weather and Drydock YFD-70 began taking on water and eventually began to sink. On October 26, 2016, **the captain of the Ocean Ranger determined it was necessary for the safety of the tug and its crew to cut loose Drydock YFD-70**, and early on the morning of that day the drydock sank within the MBNMS . . . ."

18.    NOAA's Enforcement Section did not commence any adjudicative proceedings between the time it received the investigation from the Office of Law Enforcement and the time it issued the NOVA.

19.    The decision to seek penalties against Western was made in direct contradiction of NOAA's regulations, which exempts from penalizable conduct: "an[y] activity **necessary to respond to an emergency threatening life, property, or the environment**."   15 C.F.R. § 922.132(b) (emphasis added).  It is uncontroverted that the grave risk of sinking the towboat, which was not oil-free, posed all three threats.  *See* footnote 3, above.

20.    According to the U.S. Coast Guard, even when operating in or near a National Marine Sanctuary, a towboat captain may take action necessary to prevent the loss of human life.

21.    The NOVA gave "<u>NOTICE</u>" to the Respondents that: "This is not a criminal action.  You, your attorney, or other representative have 30 calendar days from receipt of this Notice in which to respond.  During this time, you may:

> (1) Contact the [Enforcement] attorney listed below to discuss settlement.
>
> **<u>or</u>**
>
> (2) Seek to have this Notice modified . . . .
>
> **<u>or</u>**
>
> (3) Request a hearing before an Administrative Law Judge (ALJ) to deny or contest all, or any part, of the violations charged and/or the civil penalty assessed. . . .
>
> **<u>or</u>**
>
> (4) Request an extension of time of up to 30 calendar days to respond. . . . .

Exh. A. at 6-7.

22.    NOAA Regulation 15 C.F.R. § 904.102(d) allows NOAA Enforcement Attorneys discretion to extend the response period "up to 30 days."

23.     But, after issuing the NOVA, NOAA's Enforcement Section took no action at the conclusion of the first 30, or even 60, days.  Instead, NOAA continuously extended the response period, taking no action over the next **ten months**.  Ultimately, NOAA did not request a response until July 27, 2022.

24.     The NOAA Enforcement Section did not commence any adjudicative proceeding before the statute of limitations ran on October 26, 2021.  *See* 28 U.S.C. § 2462.

25.     On July 21, 2022, to avoid default, Western followed NOAA's regulations by requesting an adjudicative proceeding "to deny or contest all, or any part, of the violations charged and/or the civil penalty assessed."  Exh. A at 6-7.  At this point, NOAA's Enforcement Attorney was required to forward the matter to NOAA's Office of the Administrative Law Judges.  15 C.F.R. § 904.201.  Inexplicably, on July 22, 2022, the NOAA Enforcement Section referred the matter to another Government agency, the U.S. Environmental Protection Agency (EPA).  It did this by way of an *ex parte* letter to the EPA Office of Administrative Law Judges (OALJ).

26.     On August 10, 2022, the "Chief Administrative Law Judge, U.S. Environmental Protection Agency" issued a *sua sponte* "Order of Designation" placing the parties before an Environmental Protection Agency (EPA) Administrative Law Judge (ALJ).  Exh. B.  The EPA ALJ has ordered Western to file notices of appearances and an initial statement today.  Exh. C.

27.     In footnote 1 of Exhibit B, the EPA OALJ Order cites 5 U.S.C. § 3344 as the only authority for using an EPA ALJ for this NOAA agency hearing:

> The Administrative Law Judges of EPA are authorized to adjudicate cases brought by NOAA pursuant to an interagency agreement effective for a period beginning September 8, 2011.  This agreement was entered into under a statutory loan program that allows administrative law judges at one federal agency to perform the duties of administrative law judges at another federal agency.  *See* 5 U.S.C. § 3344.

## LEGAL STANDARD

### A.  Standard for Injunction

28.     Plaintiff Western Towboat, as the party seeking preliminary injunction, "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Jubilant DraxImage Inc. v. United States Int'l Trade Comm'n*, 396 F. Supp. 3d 113, 119-20 (D.D.C. 2019) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).

29.     On the first point, likelihood of success on the merits, the "APA directs courts to hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at 120 (quoting 5 U.S.C. § 706(2)(A)) (emphasis added) (granting preliminary injunction in APA case).

30.     The second factor, a showing that irreparable harm is likely, "is the *sine qua non* for obtaining a preliminary injunction . . . ." *Id.* at 123-24 (quotation omitted).

31.     Finally, "the last two factors merge when the Government is the opposing party." *Id.* at 119-20 (quotation omitted).

### WESTERN TOWBOAT IS LIKELY TO SUCCEED ON THE MERITS BECAUSE OF THREE FATAL DEFECTS OF THE HEARING

32.     Western is likely to succeed on the merits because of three distinct, fatal defects of this matter being administratively adjudicated.  First, NOAA failed to appoint an ALJ to hear this matter, but instead, arbitrarily referred it to the EPA.  Second, NOAA failed to "commence" the "proceeding" within the five-year statute of limitations set by Congress.  Third, by seeking "joint and several" civil penalties, and further by settling with some but not all Respondents, NOAA has violated the Due Process clause, its enabling statute, and its own regulations.

**A. It Is Contrary to Law for the EPA ALJ to Preside.**

33.     The "adjudication" of civil penalties at issue here is required "to be determined on the record after opportunity for **an agency hearing** . . . ." 5 U.S.C. § 554(a) (emphasis added).

34.     Congress has enumerated who may "preside" at such an agency hearing:

> (b) There shall preside at the taking of evidence—
>> (1) the agency;
>> (2) one or more members of the body which comprises the agency; or
>> (3) one or more administrative law judges **appointed under section 3105** of this title.

5 U.S.C. § 556 (emphasis added); *see also* 5 U.S.C. § 554(d) (requiring an "**employee** who presides at the reception of evidence." (emphasis added)).

35.     In turn, that appointment statute requires that:

> Each agency **shall appoint as many administrative law judges as are necessary** for proceedings required to be conducted in accordance with sections 556 and 557 of this title.

5 U.S.C. § 3105 (emphasis added).

36.     In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently reversed the D.C. Circuit and held that ALJs were, for Constitutional purposes, "inferior officers" of the United States and subject to the Appointments clause. The Court concluded that an invalidly appointed ALJ invalidated the conclusion of the hearing over which that ALJ had presided, making a new hearing before a properly appointed official necessary. *Lucia*, 138 S.Ct. at 2055.

37.     Further, concurring in the *Lucia* decision, Justice Breyer noted:

> The relevant statute here is the Administrative Procedure Act. That Act governs the appointment of administrative law judges. It provides (as it has, in substance, since its enactment in 1946) that "[e]ach agency shall appoint as many administrative law judges as are necessary for" hearings governed by the Administrative Procedure Act. 5 U.S.C. § 3105 . . . . In the case of the Securities and Exchange Commission, the relevant "agency" is the Commission itself. But the Commission did not appoint the Administrative Law Judge who presided over Lucia's hearing.

*Id.* at 2057-58.

38.     The only leeway afforded to an agency to "use" an ALJ from another agency is expressed in 5 U.S.C. § 3344, which states (emphasis added):

> An agency as defined by section 551 [Definitions] of this title **which occasionally or temporarily is insufficiently staffed** with administrative law judges appointed under section 3105 of this title **may use** administrative law judges selected by the Office of Personnel Management from and with the consent of other agencies.

39.     As noted, the EPA OALJ "Order of Designation" cites only this section, 5 U.S.C. § 3344, as authority for designating an EPA ALJ to preside over the subject NOAA proceeding.

40.     NOAA has violated the mandate of the appointment statute, 5 U.S.C. § 3105, because it has not had its own ALJs since the 1990s.  Instead, the agency has chosen to use EPA ALJs since at least 2011.  Exh. B, fn. 1.[4]  NOAA's insufficient staffing of ALJs is neither "occasional" nor "temporary."  It is permanent.  The prerequisites of 5 U.S.C. § 3344 have not been met.  Therefore, NOAA has no discretion to "use administrative law judges . . . from . . . other agencies."

41.     The EPA ALJ would act *ultra vires* in presiding over the NOAA proceeding, because this judge has not been appointed as an inferior officer of NOAA, and the prerequisites of 5 U.S.C. § 3344 are not met.

42.     Because the EPA and NOAA have not complied with the APA, the order of the EPA OALJ designating the EPA ALJ to preside is also not in compliance with 15 C.F.R. § 904.204 (invoking the Administrative Procedures Act (APA) at 5 U.S.C. §§ 554-557).

---

[4] While NOAA's previous rulemaking from 2006 noted that the agency had been using U.S. Coast Guard ALJs, their *very* recent (and current) rulemaking from June 2022 makes no mention of Coast Guard *or* U.S. EPA ALJs.  Compare *Civil Procedures*, 71 Fed. Reg. 12440-01 (March 10, 2006) ("[T]he Agency notes that the ALJs who hear NOAA's civil administrative enforcement cases are, in fact, employees of the U.S. Coast Guard"), *with Civil Procedures in Civil Administrative Enforcement Proceedings*, 87 Fed. Reg. 38934-01 (June 30, **2022**) (noting, without mentioning the EPA, that "15 CFR 904.201 specifically addresses . . . the docketing of matters with the Office of Administrative Law Judges.").

43.     It was contrary to law for the EPA OALJ to designate an ALJ in the first place.  In issuing an "Order of Designation," Exh. B, the EPA OALJ acted *ultra vires*, without authority in law or regulation to designate an EPA ALJ to preside over NOAA's proceeding.

44.     NOAA violated its own regulations in forwarding the request for hearing to the EPA OALJ.   Under 15 C.F.R. § 904.201(a), when a hearing is requested, NOAA "Agency counsel will promptly forward the request for hearing to the Office of Administrative Law Judges [OALJ]."   NOAA agency counsel did not forward the request for hearing to *the* OALJ at NOAA.

45.     NOAA has no discretion under statute or regulation to forward the request for hearing to *some other* agency.   NOAA acted contrary to regulations, and wholly arbitrarily, in forwarding the matter to the EPA's OALJ, an office of just two ALJs.

46.     Even if NOAA were in a period of occasional or temporary insufficient staffing of ALJs, such that it relied upon 5 U.S.C. § 3344, that statutes allows only that NOAA could "use administrative law judges **selected by the Office of Personnel Management** [OPM] from and with the consent of other agencies."  (Emphasis added.)   NOAA violated this statute by selecting its own ALJ, rather than using an ALJ selected by the OPM.    Agencies are not allowed to choose.

47.     In sum, NOAA has acted unlawfully by not appointing any ALJs, and by referring the hearing request to the EPA rather than referring the matter to the Office of Administrative Law Judges for NOAA.   Because the absence of NOAA ALJs is neither temporary nor occasional, NOAA has no authority to use other agency ALJs; and in any event, it could only use other agency ALJs if "selected by the Office of Personnel Management."   For its part, the EPA

OALJ acted without authority in designating an EPA ALJ to preside over the NOAA proceeding, which ALJ has begun issuing orders to Western.

### B.  NOAA Failed to Commence Proceedings Within Five Years

48.     NOAA was required to "commence" the subject "proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise . . . within five years from the date when the claim first accrued . . . ."  28 U.S.C. § 2462; *see also Gabelli v. S.E.C.*, 568 U.S. 442, 452 (2013) (applying § 2462 limitations period to administrative proceedings).

49.     To be a "proceeding" for purposes of 28 U.S.C. § 2462, the administrative action or proceeding must involve agency adjudication, and some process by which evidence is taken, findings are made, and liability is determined at least in part.  *See FERC v. Powhatan Energy Fund, LLC*, 949 F.3d 891, 901-02 (4th Cir. 2020) ("On balance, the procedures mandated [by the agency] more closely resemble an adjudicative 'proceeding' than a prosecutor's charging decision.'"); *Capozzi v. United States*, 980 F.2d 872, 874 (2d Cir. 1992); *3M Co. (Minnesota Min. & Mfg.) v. Browner*, 17 F.3d 1453, 1459 (D.C. Cir. 1994) ("[I]t is in the administrative proceeding that evidence is taken, findings are made and liability determined.").

50.     NOAA did not commence the subject civil-penalty proceeding before the EPA ALJ, or any other proceeding, within five years of the sinking of the tow (i.e., five years from October 26, 2016).  Therefore, NOAA's adjudicative proceeding is time-barred.  28 U.S.C. § 2462.

51.     The NOVA sent on October 18, 2021 was not itself a proceeding, nor did it commence a proceeding, for purposes of 28 U.S.C. § 2462.  *See Capozzi*, 980 F.2d at 874 ("First, by its terms section 2462 applies only to "actions, suits or proceedings.  These terms implicate some adversarial adjudication, be it administrative or judicial.  An assessment of a penalty (or tax), however, is an *ex parte* act.  It is merely the determination of the amount of the penalty and

the official recording of the liability.  Indeed, the taxpayer is not even entitled to a pre-assessment hearing."); *3M Co.*, 17 F.3d at 1459, fn. 11 (noting that "*Capozzi*, while consistent with our analysis, **reached the opposite conclusion in light of the *ex parte* non-adversarial manner in which the IRS assesses penalties.**" (emphasis added)).

52.    With 16 U.S.C. § 1437(d), the statute which provides the civil penalty powers at issue, Congress required that "No penalty shall be assessed under this subsection until after the person charged has been given notice and an opportunity for a hearing."  That is, the "notice" and the "hearing" (or proceeding) are distinct.  Mere notice of an agency's charging decision does not "commence" an adjudicative action or proceeding for purposes of 28 U.S.C. § 2462. *See FERC v. Powhatan Energy Fund, LLC*, 949 F.3d 891, 901-02 (4th Cir. 2020).

53.    When NOAA issued the NOVA, the Enforcement Section (*i.e.*, prosecutors) retained complete discretion to settle, compromise, amend, or rescind its non-adversarial assessment against Western.  Exh. A.  In fact, the Enforcement Attorney unilaterally deferred any action for over ten months after issuing the NOVA.  If an agency can wait indefinitely, then it has the power to circumvent the limitations period of 28 U.S.C. § 2462 by simply issuing notice and then granting extensions in perpetuity.  This would allow those with prosecutorial powers to delay well beyond five years the presentation of evidence to an adjudicative body.  *See 3M Co.*, 17 F.3d at 1457 ("The concern that after the passage of time 'evidence has been lost, memories have faded, and witnesses have disappeared' pertains equally to factfinding by a court and **factfinding by an agency**." (emphasis added)).

54.    The NOVA was, at most, akin to a decision to prosecute.  The document says as much:  "An investigative report prepared by the NOAA Office of Law Enforcement regarding events that occurred on October 26, 2016, and continuing thereafter, has been referred to this

office **for prosecution**.  Based on our review of that report, **this office has determined** that you violated . . . ."  Exh. A at 1; s*ee Capozzi*, 980 F.2d at 874 ("An assessment of a penalty . . . . is merely the determination of the amount of the penalty and the official recording of the liability.").

55.     The proceeding that NOAA needed to commence within five years is one before a NOAA ALJ.  *See, e.g.*, 15 C.F.R. § 904.1 ("This part sets forth the procedures governing NOAA's administrative **proceedings** for assessment of **civil penalties** . . . ."); § 904.202 ("Pleadings, papers, and other documents in the **proceeding** must be filed directly with the Office of Administrative Law Judges . . . ."); § 904.250 ("At any time after **commencement** of an administrative **proceeding**, any party may move to expedite the scheduling of the administrative proceeding as provided in § 904.209.") (emphasis added).

56.     NOAA regulations expressly provide for "pleadings" to open a proceeding.  15 C.F.R. § 904.206.  The regulations specifically distinguish these pleadings from a NOVA, both in the time for responding, and in rules for service.  See *id.* (20 days to respond to pleading); § 904.102 (30 days to respond to NOVA); § 904.3, paras. (a)-(b) (service rules).

57.     The EPA recognized that it was undertaking a "proceeding" as well.  *See* Exh. B (designating the EPA ALJ "to preside over this **proceeding** . . . ." (emphasis added)); Exh. C ("I am designated to preside over this **proceeding**. This **proceeding** is governed by the Civil Procedures of [NOAA]." (emphasis added)).

58.     No "proceeding" was commenced prior to July 22, 2022, the date on which NOAA sent an *ex parte* letter to the EPA OALJ requesting a hearing.[5]  Because NOAA failed to commence any proceeding by October 26, 2021, this matter is time-barred.

---

[5] NOAA never filed the pleading required by regulation, making it difficult to accept that any proceeding of any variety has commenced.  NOAA's regulatory failures are so prevalent as to defeat any meaningful

### C. The Government's Imposition of Joint-and-Several Civil Penalties, and Later Removal of Co-Respondents, Violated Western Towboat's Due Process Rights, and Were Contrary to Law.

59.      As noted, the NOVA was issued to four Respondents jointly and severally:  (1) Amaya Curiel Corporation, (2) Western Towboat Company, (3) Vigor Marine, LLC, and (3) Puget Sound Commerce Center, Inc.  Exh. A.

60.      A joint-and-several civil penalty proceeding is distinct in kind from a joint-and-several civil damages cases.  As the Supreme Court has noted:

> In a civil penalty action, the Government is not only a different kind of plaintiff, it seeks a different kind of relief.  The discovery rule helps to ensure that the injured receive recompense.  But this case involves penalties, which go beyond compensation, are intended to punish, and label defendants wrongdoers.  *See Meeker v. Lehigh Valley R. Co.*, 236 U.S. 412, 423 (1915) (a penalty covered by the predecessor to § 2462 is "something imposed in a punitive way for an infraction of a public law"); *see also Tull v. United States*, 481 U.S. 412, 422 (1987) (penalties are "intended to punish culpable individuals," not "to extract compensation or restore the status quo").

*Gabelli v. S.E.C.*, 568 U.S. 442, 451–52 (2013).  Therefore, prosecutorial Due Process concerns appear in a joint-and-several civil penalty proceeding that do not appear in a civil damages case.

61.      In *SEC v. Pentagon Capital Management PLC*, 725 F.3d 279 (2d Cir. 2013), the circuit court reversed the imposition of joint-and-several civil penalties as an error of law, holding:

> We also must reverse the district court's decision to impose joint and several liability for the amount of the civil penalty as an error of law.  *See Johnson v. Univ. of Rochester Med. Ctr.,* 642 F.3d 121, 125 (2d Cir.2011) ("A court abuses its discretion when . . . its decision rests on an error of law . . . .") (per curiam). The statutory language allowing a court to impose a civil penalty plainly requires that such awards be based on the "gross amount of pecuniary gain *to such defendant.*" 15 U.S.C. § 77t(d)(2) (emphasis added).  This language does not

---

analysis of what has occurred.  15 CFR 904.206(a) says: "The original of all pleadings and documents must be filed with the Judge and a copy served on the Office of Administrative Law Judges and each party. All pleadings or documents when submitted for filing must show that service has been made upon all parties. Such service must be made in accordance with § 904.3(b)."

provide room for the district court's interpretation that the civil penalty be imposed jointly and severally.

*S.E.C. v. Pentagon Cap. Mgmt. PLC*, 725 F.3d 279, 287–88 (2d Cir. 2013).  *See also S.E.C. v. Valdez*, 661 F. App'x 814, 816 (5th Cir. 2016) (accepting the rule of *Pentagon Cap. Mgmt.*).

62.    NOAA's enforcement powers come from 16 U.S.C. § 1437(d), which does not provide for joint-and-several penalty powers.  It states:  "(1) *Any person* subject to the jurisdiction of the United States who violates this chapter or any regulation or permit issued under this chapter shall be liable to the United States for a civil penalty of not more than $100,000 for each such violation, *to be assessed by the Secretary*. . . . (2) *No penalty shall be assessed* under this subsection until after *the person* charged has been given notice and an opportunity for a hearing."

63.    That is, the statutory language requires that NOAA's assessment of a civil penalty be based on an "assess[ment] by the Secretary" as to that "person" who has been charged.  *Id.* "This language does not provide room for the district court's interpretation that the civil penalty be imposed jointly and severally."  *Pentagon Cap. Mgmt.* at 288.

64.    In *United States v. Production Plated Plastics, Inc.*, 1995 WL 428451, 61 F.3d 904 (Table) (6th Cir. 1995), an early (and unpublished) decision to take up the question, the Sixth Circuit upheld joint-and-several civil penalties because the defendants "were part of a group of companies that was largely owned and completely controlled by Ladney 'as a single corporate entity' . . . . [and] functioned as one entity."  Even if *Production Plated Plastics* were the rule in this Court, it would not apply because the four Respondents have only arms-length corporate relationships and had different roles related to the tow's loss, which NOAA admits.[6]

---

[6] Exh. A ("[The tow] was subject to a sales agreement between Respondent Puget Sound Commerce Center, Inc. (PSCCI), **the seller**, and Respondent Amaya Curiel Corporation (Amaya), **the buyer**. Pursuant to that agreement, PSCCI was **responsible for delivering** the vessel to Amaya's facility in

65. NOAA never made an individualized penalty assessment against the Respondents. Any assessment not individualized to Western is contrary to the Due Process clause because it would penalize Western for others' wrongdoing.

66. Without any statutory basis, NOAA claims in its regulations to have unqualified power to assess joint-and-several civil penalties:

> A NOVA may assess a civil penalty against two or more respondents jointly and severally. **Each joint and several respondent is liable for the entire penalty** but, in total, no more than the amount finally assessed may be collected from the respondents.

15 C.F.R. § 904.107 (emphasis added).

67. Under NOAA's regulations, only NOAA has control over who is made a joint-and-several respondent. That is, respondents have no power to implead additional joint-and-several respondents in order to ensure a right of contribution.

68. On August 17, 2022, NOAA issued an "Amended NOVA" to Amaya Curiel Corporation, Vigor Marine, LLC, and Puget Sound Commerce Center, Inc. (the "Settling Respondents"), using the same case number with the added letter "A". Under this Amended NOVA, to which Western was not a Respondent, NOAA sought the full amount of the original NOVA, $5,169,978.

69. At the same time, NOAA had referred its Original NOVA against the Respondents to the EPA OALJ seeking a full assessment amount of $5,169,978. That is, at the time NOAA issued its Amended NOVA, NOAA had outstanding claims for double the assessed amount, or $10,339,956. *But see* 15 C.F.R. § 904.107 ("[I]n total, no more than the amount finally assessed may be collected from the [joint-and-several] respondents.").

---

Ensenada, Mexico. To accomplish delivery, PSCCI, through its affiliated company Respondent Vigor Marine, LLC, (Vigor), **contracted** with Respondent Western Towboat Company (Western) **to tow** Drydock YFD-70 from PSCCI's facilities in Seattle, WA, to Amaya's facilities in Ensenada, Mexico." (emphasis added)).

70.     Later on August 17, 2022, NOAA signed an irrevocable settlement agreement with the three Settling Respondents to resolve the Amended NOVA assessment of $5,169,978. It settled this assessment for $720,489.  They remained parties to the EPA ALJ proceeding.

71.     NOAA then filed a Notice of Amendment with the EPA ALJ, purporting to change the Original NOVA through a written narrative, to reflect NOAA's unilateral removal of the three joint-and-several Co-Respondents.  NOAA reported to the Tribunal that "the Amended NOVA **severed** the joint and several claims asserted against [the Amended Respondents] from the claims against Western Towboat Company."

72.     NOAA failed to serve any pleadings or amended pleadings reflecting NOAA's severing of the Settling Respondents.  This prompted *ex parte* communications on August 22, 2022 between the EPA OALJ and a NOAA Enforcement Attorney.  In these, an EPA OALJ Attorney-Advisor advised NOAA counsel to file a New NOVA against Western alone, without the joint-and-several co-Respondents.  In their *ex parte* communications, a NOAA Enforcement Attorney thanked the EPA OALJ attorney-advisor for his "advice."

73.     On August 23, following the EPA ALJ staff's *ex parte* substantive advice, NOAA filed a New NOVA, which struck the Settling Parties, and struck the Joint-and-Several promise, but continued to assert the full penalty amount of $5,169,978.

74.     Confusingly, this New NOVA tells Western that – all over again – it has 30 days to respond to NOAA by entering into settlement discussions, by seeking modification of the NOVA, by requesting a hearing, or by requesting an extension of time to respond.

75.     But without waiting to see if a hearing was requested under the New NOVA, the EPA ALJ *sua sponte* ordered the Settling Parties "removed" from the administrative proceeding, and ordered that the deadlines of the previous Prehearing Order remained in effect.

76.     The EPA ALJ cited 15 C.F.R. § 904.213 as the only authority for "removing" the Settling Parties.  But this NOAA regulation requires:  "If settlement is reached before the Judge has certified the record, <u>the Judge **shall** remove the case from the docket</u> upon notification by the Agency."  (Emphasis added.)  As there is no regulatory authority allowing the ALJ to remove joint-and-several parties piecemeal, the ALJ was required to remove the case from the docket.

77.     The Original NOVA contained the following express provision (underline added):

> **JOINT & SEVERAL LIABILITY:** The civil monetary penalty is assessed jointly and severally against all Respondents. All Respondents jointly, and each individually, are liable for the total monetary penalty. Whether one Respondent pays the entire amount or each Respondent pays equal or unequal portions of the penalty is for Respondents to determine. <u>This case will not, however, be closed against any Respondent until the total assessed penalty or a mutually agreed upon compromise amount is paid</u>.

Exh. A at 6 (emphasis added)

78.     By proceeding against Western for the full amount of $5,169,978, NOAA has violated this promise.  NOAA has closed the case against three Respondents without obtaining the total assessed penalty or a mutually agreed upon compromise amount is paid.  When NOAA did not obtain a mutually agreed upon compromise amount, it violated its promises.  NOAA must be equitably estopped from proceeding against Western alone.

79.     In issuing the New NOVA, NOAA's Enforcement Section again failed to assess the individualized penalty amount it should seek against Western.  Instead, NOAA continues to assert the entire original amount of $5,169,978.[7]  *But see* 15 C.F.R. § 904.101 (requiring that NOVA contain bases for preliminary assessment); § 904.108 (requiring assessment of "the respondent's degree of culpability, any history of violations" and other factors).

---

[7] NOAA bizarrely stated in a notice that it would not seek the full amount, even though its assessment was for the full amount.  The EPA ALJ commented on this in a footnote, observing the fact that: "Although the Notice of Amendment to Agency's Pleading indicates the Agency's intent to reduce the proposed penalty by $720,489, the Amended [New] NOVA also assess a penalty of $5,169,978."

80.     NOAA has refused to provide Western with any correspondence it had with the Settling Parties prior to their settlement, despite that these are Public Records, and that NOAA can articulate no basis for withholding them.   NOAA is withholding these Public Records because it does not want Western to see the manner in which NOAA extinguished Western's Due Process rights by severing the three Co-Respondents from the administrative proceeding.

81.     What is known is that NOAA's irrevocable settlement agreement with the Settling Parties expresses that NOAA gave them a reduction for "arranging and funding a research vessel voyage" at sea that six NOAA employees took.   (NOAA refuses to identify to Plaintiff the six Government employees that took this trip.)   Any voyages to sea were (at most) investigative costs to be borne by NOAA and not to be shifted to the investigated parties.   Every dollar that NOAA reduced from the Settling Parties for paying for this trip, it now wrongly seeks against Western.

82.     The EPA ALJ proceeding, as a joint-and-several civil penalty proceeding, further violates Western's Due Process rights because the U.S. Coast Guard is not named as a party to the proceeding.

83.     Because of NOAA's failures to conform their administrative conduct to either the APA or to NOAA Regulations, Plaintiff is "likely to succeed on the merits."

**IRREPARABLE HARM WILL RESULT FROM PROCEEDING**

84.     Plaintiff will suffer irreparable harm if NOAA and the EPA are permitted to hold a proceeding presided by an EPA ALJ not appointed by NOAA; outside the time-bar of 28 U.S.C. § 2462; and while facing the full amount of NOAA's original assessment against the joint-and-several parties after NOAA severed the Settling Parties.   This is for at least three reasons.

85.     First, the costs of proceeding before an invalidly constituted hearing would impose irreparable harm on Western, which entitles it to seek relief.  If the matter were not time-barred, these costs would have to be borne a second time should NOAA later properly appoint a hearing in accordance with the law and its own regulations.

86.     While "economic loss that is *recoverable* in a final judgment or by any other reasonable means does not constitute *irreparable* injury," *Achagzai v. Broad. Bd. of Governors*, No. 14-cv-768 (RDM), 2016 WL 471274, at *4 (D.D.C. Feb. 8, 2016), in this case, only partial recovery of fees (at most) would be allowed.  With 5 U.S.C. § 504(b), the APA generally caps fees at $125/hour, well below Western's actual expenditures.  Also, numerous caveats apply to the ability to recover costs and fees.  *Id.* (allowing *inter alia* the ALJ to waive fees on a finding that "special circumstances" existed).

87.     Second, Western would suffer non-economic irreparable harm in that it would be made to put on its entire case before what is an invalidly appointed tribunal.  It is improper to allow NOAA a chance to preview Western's case before an improperly constituted proceeding, and then taking a "mulligan" in a proceeding that does conform to law and regulations.

88.     Related, this is a *penalty* proceeding.  *See Gabelli v. S.E.C.*, 568 U.S. 442, 451–52 (2013) ("But this case involves penalties, which go beyond compensation, are intended to punish, and label defendants wrongdoers."); *3M Co. (Minnesota Min. & Mfg.) v. Browner*, 17 F.3d 1453, 1456–57 (D.C. Cir. 1994) ("According to the Administrative Procedure Act, agency attorneys who bring administrative complaints, including complaints for civil penalties, are performing 'prosecuting functions.'").  Western should not face double jeopardy where NOAA chooses not to comply with the law in the first instance.

89.     Last, Western will be prejudiced by what unfortunately appears to be an inherently biased process.  NOAA shares in the costs of funding the EPA OALJ, a shop of two ALJs who preside over NOAA agency hearings as a staple of their own workload.

90.     NOAA and the EPA have chosen this relationship for over ten years, rather than NOAA appointing agency ALJs as required, 5 U.S.C. § 3105; or, even if the prerequisites of 5 U.S.C. § 3344 applied, rather than "us[ing] administrative law judges selected by the [OPM]."

91.     Whether purposeful or not, the net effect of NOAA's disregard for 5 U.S.C. § 3105 and § 3344 is that **NOAA unlawfully enjoys the power to forum shop**.

92.     The U.S. EPA ALJs cannot be neutral so long as they are aware that a discontented NOAA could appoint its own ALJs (as required), or look to some other agency (when allowed).

93.     By defining prerequisites and conditions within 5 U.S.C. § 3344 (viz. allowing the use of other agency's ALJs only to cover occasional or temporary staffing shortages, and only when they are selected by the OPM), Congress has specifically guarded against the inherent bias risks that stem from an agency at liberty to forum shop.

94.     It is no small thing to expect that those guarding administrative rights under the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.*, would themselves follow the statutes and regulations that empower them to adjudicate rights in the first place.  *See Kelley v. Calio*, 831 F.2d 190, 191–92 (9th Cir. 1987) (overturning NOAA ALJ and noting:  "It is the duty of a reviewing court to ensure that an agency follows its own procedural rules.  In the present case, it is clear the rules were not followed.").

**CORRECTING NOAA AND EPA CONDUCT IS IN THE PUBLIC INTEREST**

95.     As noted, of the four factors showing the propriety of injunctive relief, "the last two factors merge when the Government is the opposing party."  *Jubilant DraxImage Inc. v.*

*United States Int'l Trade Comm'n*, 396 F. Supp. 3d 113, 119–20.  For that reason, it is sufficient in this case to show that an injunction is in the public interest.  *Id.*

96.     It is in the public interest to see administrative agencies comply with the APA and with agency regulations, especially where significant penalties exceeding $5 million against a family-owned small business are at stake.  This conduct must be checked by the judiciary in order to preserve the balance of powers carefully hewed by Congress in passing the APA.

<u>**Count I: Failure to Comply with the Administrative Procedures Act**</u>

97.     Western repeats the allegations of paragraphs 1-96 as if set forth fully herein.

98.     The EPA acted arbitrarily, capriciously, and contrary to law, and failed to comply with the APA, by ordering Western Towboat to appear at a hearing over which an EPA ALJ was to preside, and by further issuing orders under that proceeding.

99.     NOAA acted arbitrarily, capriciously, and contrary to law, and failed to comply with the APA and agency regulations, by referring the hearing request to the EPA OALJ rather to the OALJ at NOAA.

100.    The EPA OALJ Order should be declared invalid, and the EPA and NOAA enjoined from further ordering Western to appear before an ALJ appointed by any agency other than NOAA.

101.    NOAA acted arbitrarily, capriciously, and contrary to law by commencing a proceeding after extending the commencement by ten months, despite the maximum extension allowed in regulation was 30 days beyond the Respondents' original 30-day period to respond.

102.    The EPA and NOAA acted arbitrarily, capriciously, and contrary to law by constituting a proceeding to assess joint-and-several civil penalties against distinct corporate persons.

**<u>Count II: The Proceeding Is Time-Barred</u>**

103.    Western repeats the allegations of paragraphs 1-102 as if set forth fully herein.

104.    The EPA and NOAA acted arbitrarily, capriciously, and contrary to law by commencing a proceeding that was time-barred.  28 U.S.C. § 2462.

**<u>Count III: Violations of Due Process Clause</u>**

105.    Western repeats the allegations of paragraphs 1-104 as if set forth fully herein.

106.    The EPA and NOAA acted in violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution by constituting a proceeding to assess joint-and-several civil penalties against distinct corporate persons including the Plaintiff.

107.    The EPA and NOAA acted in violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution by severing or removing joint-and-several civil penalty co-Respondents of the Plaintiff.

**PRAYER FOR RELIEF**

Western Towboat Company prays this Court for Orders as follows:

A.  A declaration that the EPA ALJ proceeding is invalid, null, and void.

B.  Alternatively, an Order staying further proceeding by the EPA ALJ pending resolution of this Complaint.

C.  An injunction barring NOAA from taking any further civil penalty actions related to this matter, as it is time-barred.

D.  Alternatively, an Order enjoining NOAA from proceeding before any hearing other than before a NOAA ALJ.

E. All other relief as presents itself as just and necessary based on the foregoing assertion of rights.

Dated:  September 2, 2022.

/s/ J. Stephen Simms
J. Stephen Simms (# 382388)
Thomas M. Brown (admission pending)
Simms Showers LLP
201 International Circle, Suite 230
Baltimore, Maryland 21030
Ph.:    410-783-5795
Fax:    410-510-1789
jssimms@simmsshowers.com
tmbrown@simmsshowers.com

Counsel to Western Towboat
Company

## VERIFICATION

I verify that, as legal counsel to Western Towboat, Co., I have personal knowledge of the information alleged in the foregoing Complaint, and that under the penalty of perjury, the facts set forth therein are correct and true.

Pursuant to 28 U.S.C. § 1746(1), I solemnly declare under penalty of perjury that the foregoing is true and correct.

Executed on September 2, 2022.

/s/ J. Stephen Simms
J. Stephen Simms