## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                                    )
WESTERN TOWBOAT                     )
COMPANY,                            )
                                    )
              Plaintiff,            )
                                    )
      v.                            )        Civil Action No. 22-2665 (ABJ)
                                    )
NATIONAL OCEANIC                    )
AND ATMOSPHERIC                     )
ADMINISTRATION, et al.,             )
                                    )
              Defendants.           )
_____ )
```

## <u>MEMORANDUM OPINION</u>

Plaintiff Western Towboat Company ("Western Towboat") brought this action against the National Oceanic and Atmospheric Administration ("NOAA") and the Environmental Protection Agency ("EPA"). Compl. [Dkt. # 1]. After Western Towboat's ship discharged an object within the Monterey Bay National Marine Sanctuary ("MBNMS"), NOAA charged plaintiff and three other companies with violations of the National Marine Sanctuaries Act, 16 U.S.C. § 1431 *et seq.* Compl. ¶¶ 9–15. Plaintiff requested an administrative adjudication on the charges, and it now claims that the agency defendants took several actions during the proceeding that violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 *et seq.*, and the Fifth Amendment of the United States Constitution. Compl. ¶¶ 97–107.

The problem is that the administrative adjudication was never completed. Plaintiff brought this suit shortly after the adjudication began, challenging the timing of the agency's administrative complaint, the agency's decision to refer the matter to an Administrative Law Judge in the EPA, and the agency's settlement with and severance of the three other companies

subject to liability.  Because none of the challenged actions are final agency actions, and because plaintiff has not satisfied the injury-in-fact requirement for standing and ripeness, this case cannot move forward.

Therefore, for all of the reasons stated below, the case will be dismissed for failure to state a claim and lack of subject matter jurisdiction.

## BACKGROUND

### A. Factual Background

Western Towboat is a maritime towing company that was hired by a commercial shipyard, Vigor Marine, LLC ("Vigor"), to tow a 528-foot-long steel "drydock" from Seattle, Washington to Ensenada, Mexico.  Compl. ¶ 6; DSUMF ¶ 1; PSUMF ¶ 3, citing *W. Towboat Co. v. Vigor Marine, LLC*, 85 F.4th 919, 922–23 (9th Cir. 2023).[1]  A drydock is "a floating enclosed basin that allows cleaning or repairing parts of a ship that would ordinarily be underwater."  PSUMF ¶ 2.  Vigor had sold the drydock to Amaya Curiel Corporation ("Amaya") to be scrapped at its shipyard in Mexico.  PSUMF ¶¶ 2–3.

Western Towboat's vessel, the *Ocean Ranger*, left Seattle with the drydock in tow on October 17, 2016.  DSUMF ¶ 1; PSUMF ¶ 6.  The tug encountered rough weather during the voyage, and in the early morning of October 26, the drydock began to take on water and capsize.  Comp. ¶ 13; DSUMF ¶ 2; PSUMF ¶ 12.  Determining that it was necessary for the safety of the tug and its crew, the captain of the *Ocean Ranger* decided to cut the drydock loose.  Compl. ¶ 13;

---

1    In its statement of undisputed material fact, plaintiff referred to the factual background set forth in *W. Towboat Co. v. Vigor Marine, LLC*, 85 F.4th 919 (9th Cir. 2023), in which the Ninth Circuit addressed the lawsuit between Vigor and Western Towboat over the same incident that underlies this case.  *See generally* PSUMF.  Defendant also referred "to the Ninth Circuit's opinion for a complete accounting of the factual . . . conclusions stated therein," *see* Defs.' Resp. to PSUMF [Dkt. # 32-1] at 9, so the Court will cite portions of the factual background for this case.

DSUMF ¶ 3; PSUMF ¶ 13.  The drydock sank and settled within the Monterey Bay National Marine Sanctuary on the same day, October 26, 2016.  Compl. ¶ 13; DSUMF ¶ 3; PSUMF ¶¶ 13–14.

The National Oceanic and Atmospheric Administration investigated the incident, and approximately five years later, on October 18, 2021, it issued a Notice of Violation and Assessment of Administrative Penalty ("Violation Notice") to Western Towboat, Vigor, Amaya, and Vigor's affiliate company, Puget Sound Commerce Center, Inc. ("Puget Sound").  Compl. ¶ 14; DSUMF ¶ 4; PSUMF ¶ 16.  The notice charged the companies with three violations of the National Marine Sanctuaries Act based on their: (1) discharging the dry dock within the MBNMS; (2) abandoning the dry dock within the MBMNS; and (3) causing the destruction, loss, or injury of "fish, deep-sea invertebrates, and extensive seabed habitat of the MBNMS."  Ex. 2 to Defs.' Mot. [Dkt. # 23-5] ("Violation Notice") at 5–6.  It explained that the total assessed penalty for the violations would amount to $5,169,978, and it announced:

> The civil monetary penalty is assessed jointly and severally against [the companies].  [The companies] are jointly, and each individually, liable for the entire penalty.  Whether one of you pays the entire amount or each of you pays equal or unequal portions of the penalty is for you to determine.

*Id*. at 2.

NOAA advised the companies that they had thirty days to respond, and it laid out five options:  (1) contact the enforcement attorney "to discuss settlement"; (2) seek to have the notice "modified to conform to the facts or law as you see them"; (3) request "a hearing before an Administrative Law Judge . . . to deny or contest all, or any part, of the violations charged and/or the civil penalty assessed"; (4) request an extension of time of up to thirty days to respond; or (5) take no action, "in which case this Notice shall become effective as the final administrative decision."  *Id.* at 3–4.  And the Violation Notice concluded with a warning:

> **WARNING: <u>If you fail to exercise your rights within 30 calendar days
> following the receipt of this Notice, all of the allegations and the
> penalty herein will be taken as admitted and this assessment will
> become a final administrative order enforceable in the United States
> District Court.</u>**

*Id.* at 4 (emphasis in original).

Between November 17, 2021, and June 21, 2022, the agency granted numerous requests for extensions of time to respond to the Violation Notice. DSUMF ¶ 7. Generally, one of the companies would ask the NOAA enforcement attorney for an extension of time to respond, and then NOAA would grant the request and notify the other three companies that the new response deadline would be applied to them as well. *See, e.g.*, Ex. 3 to Defs.' Mot. [Dkt. # 23-6] at 4. Vigor, Amaya, and Western Towboat each requested extensions of time, and there are no exhibits showing that any of the companies rejected or disagreed with the extensions of time.[2] The due date for the last extension set the companies' response on July 27, 2022. Ex. 3 at 12–14.

On July 21, 2022, Western Towboat requested a hearing before an Administrative Law Judge ("ALJ") on the Violation Notice. Compl. ¶ 25; DSUMF ¶ 8, citing Ex. 4 to Defs.' Mot. [Dkt. # 23-7] at 2. NOAA promptly forwarded plaintiff's request for hearing and the Violation Notice to the Environmental Protection Agency's Office of Administrative Law Judges on July 22, 2022. DSUMF ¶ 9. NOAA and the EPA had previously entered into an interagency

---

2    Plaintiff asserts that NOAA "unilaterally" extended its time to respond to the notice. *See* Pl.'s Mot. at 22 ("[T]he NOAA Enforcement Attorney unilaterally deferred any action for over ten months after issuing the [Violation Notice]"); PSUMF ¶ 19 ("After a series of unilateral extensions by NOAA . . ."). But defendants have submitted the emails showing the companies' requests, including one email in which Wester Towboat's counsel requested an extension of time to respond. *See* Ex. 3 to Defs.' Mot. at 7 ("[I]t would make sense to further move the present March 8th deadline for response to the[Violation Notice], to a further date: we suggest, Friday, May 27th. Are you/ is NOAA, agreeable to this?"). In any event, whether the extensions were requested or supported by Western Towboat does not bear on the dispositive questions here.

agreement authorizing the EPA's ALJs to preside over NOAA enforcement actions on a reimbursable basis.  DSUMF ¶¶ 10–12.  On August 10, 2022, the EPA's Chief Administrative Law Judge issued an "Order of Designation" that assigned an EPA ALJ to preside over the enforcement proceeding.  DSUMF ¶ 13.  The same day, the assigned ALJ issued a "Prehearing Order" setting "pertinent deadlines, filing requirements, and other instructions for participation in prehearing matters."  DSUMF ¶ 13; PSUMF ¶ 20.

A week later, on August 17, NOAA settled with the three other companies subject to the Violation Notice.   DSUMF ¶ 14; PSUMF ¶ 21; *see* Ex. 7 to Defs.' Mot. [Dkt. # 23-10] ("Settlement Agreement").   To effectuate the settlement, the agency issued an Amended Violation Notice ("Amended Notice") against Vigor, Amaya, and Puget Sound that severed the claims against them from those against Western Towboat.  DSUMF ¶ 15; PSUMF ¶ 22; *see* Ex. 6 to Defs.' Mot. [Dkt. # 23-9].  The settlement agreement obligated the three companies to pay $720,489 "as full settlement of all claims, charges, and complaints by NOAA arising from the violations described in the Amended Notice."  Settlement Agreement at 3.

The next day, NOAA filed a "Notice of Amendment to Agency's Pleading" in the administrative adjudication that reported the settlement and severance of Vigor, Amaya, and Puget Sound.  DSUMF ¶ 16, citing Ex. 7 to Defs.' Mot [Dkt. # 23-10] ("Notice of Amendment") at 7–12.  It stated:

> The severance and settlement of the joint and several claims asserted against Puget Sound Commerce Centers, Inc., Vigor Marine, LLC, and Amaya Curiel Corporation obviates the need for a hearing with respect to those three respondents and reduces the amount of the penalty that the Agency is seeking to recover from Western Towboat Company in this matter by $720,489.00.  The Agency has divided the cases as follows: NW1606019 remains the case designation for the case against Western Towboat Company, and NW1606019A now refers to the now settled case against Puget Sound Commerce Centers, Inc., Vigor Marine, LLC, and Amaya Curiel Corporation.

*Id.* at 8.  The notice then proposed several amendments to the original Violation Notice to reflect the elimination of the three settling companies, and the elimination of joint and several liability for the remaining civil monetary penalty.  *Id*. at 8–9.

On August 22, a staff member at the EPA's Office of Administrative Law Judges emailed NOAA's enforcement attorney informing him that the EPA had received the Notice of Amendment, but needed NOAA to submit an "official Amended [Violation Notice]" via the ALJ's e-filing system.  Ex. 7 to Defs.' Mot. [Dkt. # 23-10] ("Emails") at 15.  The NOAA enforcement attorney then emailed Western Towboat alerting it of the EPA's instruction, and asking whether the company would accept service of the Amended Violation Notice via email, as the parties had done in the past.  *Id*. at 20.  Western Towboat consented to service via email, and on August 23, 2022, NOAA issued the Amended Violation Notice to the company, explaining that it "amend[ed] and supersed[ed]" the Violation Notice issued on October 18, 2021.  *Id.* at 26.  The Amended Violation Notice eliminated the three settling companies and the joint-and-several liability provision, but notwithstanding the representations in the Notice of Amendment, the penalty assessed against Western Towboat remained the same – $5,169,978.00 – and was not reduced by the settling parties' contribution.  Ex. 7 to Defs.' Mot. [Dkt. # 23-10] at 21–25 ("Amended Violation Notice").  NOAA also filed the Amended Violation Notice with the

EPA ALJ.  Suppl. to Notice of Am. to Agency's Pleading, Ex. 7 to Defs.' Mot. [Dkt. # 23-10] at 28–35.[3]

On August 24, the EPA ALJ issued an "Order on Amended Pleading" that acknowledged the Amended Violation Notice, removed Vigor, Amaya, and Puget Sound from the adjudication, and adjusted the case caption to reflect Western Towboat as the sole respondent.  Ex. 7 to Defs.' Mot. [Dkt. # 23-10] at 36.

### B.  Procedural History

Western Towboat filed the instant three-count suit on September 2, 2022.  Compl.  Count One alleges that defendants violated the APA by: (1) referring and ordering Western Towboat to appear at a hearing before an EPA ALJ instead of an ALJ at NOAA; (2) "commencing a proceeding" ten months after issuing the Violation Notice; and (3) "constituting a proceeding to assess joint-and-several civil penalties against district corporate persons."  Compl. ¶¶ 97–102. Count Two alleges that defendants violated the APA "by commencing a proceeding that was time-barred" under 28 U.S.C. § 2462, that is, commencing the adjudication more than five years after the incident at issue.  Compl. ¶¶ 103–04.  And Count Three alleges that defendants violated the Due Process Clause by:  (1) "constituting a proceeding to assess joint-and-several civil penalties against distinct corporate persons"; and (2) "severing or removing joint-and-several civil penalty co-Respondents of the Plaintiff."  Compl. ¶¶ 105–07.

---

[3]    On August 25, NOAA also filed a "Notice of Communications Regarding Filing Procedure" in the administrative adjudication. Ex. 7 to Defs.' Mot. [Dkt. # 23-10] at 13–19.  The notice explained that "Western Towboat has . . . requested the substance of the communications between Agency counsel and Court personnel" regarding the Amended Violation Notice.  *Id.* at 13.  The filing contained all the emails between NOAA's counsel and the EPA ALJ staff regarding the Amended Violation Notice, "[i]n the interest of maintaining a transparent and open proceeding."  *Id.* at 14–19.

The same day it filed the complaint, plaintiff moved for a preliminary injunction seeking "immediate relief from two orders of the [EPA ALJ] purporting to designate a hearing before an EPA ALJ, and then issuing orders thereunder."  Mot. for Prelim. Inj. [Dkt. # 2]; Mem. in Supp. of Mot. for Prelim. Inj. [Dkt. # 2-1] at 1.  It also filed a motion to stay in the administrative adjudication, seeking to stay the proceeding until the Court resolved the federal lawsuit. DSUMF ¶ 19; PSUMF ¶ 28; Ex. 8 to Defs.' Mot. [Dkt. # 23-11] at 1–24.  NOAA consented to Western Towboat's motion to stay, Ex. 8 at 31, and on September 19, 2022, the EPA ALJ granted the motion and stayed the adjudication pending the outcome of this suit.  *Id.* at 33.

On September 23, 2022, Western Towboat withdrew its motion for preliminary injunction, Notice of Withdrawal of Mot. [Dkt. # 10], and on November 7, 2022, defendants answered the complaint.  Answer [Dkt. # 13].  From November 2022 to May 2023, the parties attempted to reach a settlement.  *See* Joint Status Reports [Dkt. ## 14, 16–19].

The parties did not settle, and on May 19, 2023, they filed a Meet and Confer statement that proposed a briefing schedule for motions for summary judgment.  Meet & Confer Statement [Dkt. # 20] at 4.

Pending before the Court are defendants' motion for summary judgment, Defs.' Mot. for Summ. J. [Dkt. # 23] ("Defs.' Mot."), and plaintiff's cross-motion for summary judgment.  Pl.'s Cross-Mot. for Summ. J. [Dkt. # 25] ("Pl.'s Cross-Mot.").  The motions have been fully briefed. Defs.' Reply and Opp. to Pl.'s Cross-Mot. [Dkt. # 29]; Pl.'s Reply [Dkt. # 31]; Defs.' Statement

of Undisputed Material Facts [Dkt. # 23-2] ("DSUMF"); Pl.'s Statement of Undisputed Material

Facts [Dkt. # 25-9] ("PSUMF").[4]

## STANDARD OF REVIEW

Defendants' motion raised two threshold issues before addressing the merits of plaintiff's

claims. Defs.' Mot. at 8–15. Defendants argue that Counts One and Two under the APA should

be dismissed because neither challenges a "final agency action." *Id*. at 8–11. The agencies also

assert that the Due Process claim under Count Three should be dismissed for lack of subject

matter jurisdiction because Western Towboat lacks standing, and the claim is not ripe. *Id*. at 11–

13.[5]

In evaluating dismissal under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the

complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that

can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113

(D.C. Cir. 2000) (citations omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C.

Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting

---

4       Plaintiff also submitted supplemental briefing alerting the Court to the Supreme Court's
decisions in *Securities and Exchange Commission v. Jarkesy*, 603 U.S. 109 (2024) and *Loper
Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). *Loper Bright*'s holding regarding
deference to an agency's interpretation of law plainly does not apply to the issues before the
Court because the agencies have not invoked any argument related to its interpretation of a
statute. *Jarkesy* does not bear on this case either. That case addressed "the straightforward
question" of "whether the Seventh Amendment entitles a defendant to a jury trial when the SEC
seeks civil penalties against him for securities fraud." *Jarkesy*, 603 U.S. at 120. None of the
claims in the complaint allege that plaintiff was entitled to a jury trial under the Seventh
Amendment. *See Sai v. Transp. Sec. Admin.*, 326 F.R.D. 31, 33 (D.D.C. 2018) ("It is
axiomatic . . . that a party may not amend his complaint through an opposition brief.") (internal
quotation marks omitted); *see id*. (collecting cases stating the same). And further, this suit does
not involve claims for securities fraud, or any statute similar to the one at issue in *Jarkesy*.

5       Defendants also argued that plaintiff did not exhaust its administrative remedies for the
Due Process claim, Defs.' Mot. at 13–15, but the Court does not need to reach that issue given its
ruling on standing and ripeness.

*Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (applying principle to a Rule 12(b)(1) motion). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (rule 12(b)(6) case); *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (rule 12(b)(1) case).

### Subject Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. Env't Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."

*Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*:  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678, citing *Twombly*, 550 U.S. at 556.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556.  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged."  *Kowal v. MCI Commc'ns Corp.*, 16

F.3d 1271, 1276 (D.C. Cir. 1994), citing *Schuler*, 617 F.2d at 608. Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

### I.    The APA claims fail because they do not properly challenge final agency actions.

The Administrative Procedure Act limits judicial review to "final" agency actions. *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."). Finality "allows the agency an opportunity to apply its expertise and correct its mistakes," *DRG Funding Corp. v. Sec'y of Hous. & Urb. Develop.*, 76 F.3d 1212, 1214 (D.C. Cir. 1996), and it prevents "piecemeal appellate consideration of rulings that may fade into insignificance" upon completion of the agency's decisionmaking process. *Aluminum Co. of Am. v. United States*, 790 F.2d 938, 942 (D.C. Cir. 1986), quoting *Nat'l Treasury Emps. Union v. Fed. Lab. Rels. Auth.*, 712 F.2d 669, 674 (D.C. Cir. 1983) (internal quotation marks omitted). Although the requirement of finality is not jurisdictional, "without final agency action, 'there is no doubt that [plaintiff] would lack a cause of action under the APA.'" *Soundboard Assoc. v. Fed. Trade Comm'n*, 888 F.3d

1261, 1267 (D.C. Cir. 2018), citing *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003).

There are two aspects to the finality analysis. First, an agency action is considered final if it "mark[s] the consummation of the agency's decisionmaking process" and is not "of a merely tentative or interlocutory nature." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks omitted). The second inquiry is whether the challenged action is one "by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* (internal quotation marks omitted); *see Sw. Airlines Co. v. U.S. Dep't of Transp.*, 832 F.3d 270, 275 (D.C. Cir. 2016) (explaining that an action "must satisfy both prongs . . . to be considered final").

In the context of an administrative adjudication, "provisional" rulings "that do[] not end the controversy" are typically not considered final. *See DRG Funding Corp.*, 76 F.3d at 1215, citing *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939) ("Orders setting cases for hearings despite objections to the agency's jurisdiction have long been considered nonfinal[.]"). "When completion of an agency's processes may obviate the need for judicial review, it is a good sign that an intermediate agency decision is not final." *DRG Funding Corp.*, 76 F.3d at 1215, citing *Fed. Trade Comm'n v. Standard Oil of Cal.*, 449 U.S. 232, 242 (1980).

Plaintiff's two claims under the APA challenge three agency actions. Counts One and Two allege that NOAA's "commencing" of an administrative proceeding on July 22, 2022 was untimely. *See* Compl. ¶ 101 ("NOAA acted arbitrarily, capriciously, and contrary to law by commencing a proceeding" ten months after issuing the Violation Notice); Compl. ¶ 104 ("EPA and NOAA acted arbitrarily, capriciously, and contrary to law by commencing a proceeding that was time-barred."). Count One also challenges the agency's decision to "constitut[e] a

proceeding to assess joint-and-several civil penalties against distinct corporate persons," and to refer the adjudication to an EPA ALJ.  Compl. ¶¶ 98–102.

As to the timeliness of the proceeding, the parties disagree about whether the adjudication "commenced" when NOAA first issued the Violation Notice on October 18, 2021, or when NOAA referred plaintiff's request for hearing to the EPA on July 22, 2022.  *See* Defs.' Mot at 18–22 (arguing that "NOAA initiated an adversarial proceeding within the applicable statutes by timely issuing the Violation Notice to Plaintiff on October 18, 2021"); Pl.'s Mot. at 25 ("No 'proceeding' was commenced prior to July 22, 2022, the date on which NOAA sent an *ex parte* letter to the EPA OALJ requesting a hearing.").  But regardless of which is the operative date, neither the Violation Notice nor the referral to the ALJ is a final agency action subject to judicial review.

In *Federal Trade Commission v. Standard Oil of California*, 449 U.S. 232 (1982), the Supreme Court held that the "issuance of a complaint averring reason to believe" that a company violated federal law was not a "final" agency action.  *Id.* at 243.  In that case, the Federal Trade Commission issued an administrative complaint against eight oil companies charging them with violations of the Federal Trade Commission Act, and soon after, one company filed a federal suit alleging that the agency had issued the complaint against it improperly.  *Id.* at 234–35.  The Court explained that the complaint served only as an "averment" of the agency's belief that the plaintiff violated the law, and therefore, it was "not definitive in a comparable manner" to a final agency action.  *Id.* at 241 (internal quotation marks omitted).  The Court further noted that the complaint "had no legal or practical effect upon [the plaintiff's] business other than the disruptions that accompany any major litigation," which did not make the complaint a "final" action.  *Id.* at 243; *see also Aluminum Co. of Am.*, 790 F.2d at 941 ("It is firmly established that

agency action is not final merely because it has the effect of requiring a party to participate in an agency proceeding.").

The same can be said of the Violation Notice in this case. The October 18 Violation Notice set forth NOAA's position that Western Towboat violated the National Marine Sanctuaries Act:

> The National Oceanic and Atmospheric Administrative (NOAA), Office of General Counsel, is responsible for prosecuting violations of the National Marine Sanctuaries Act on behalf of the Secretary of Commerce. An investigative report prepared by the NOAA Office of Law Enforcement . . . has been referred to this office for prosecution. Based on our review of that report, this office has determined that you violated the National Marine Sanctuaries Act.

Violation Notice at 1. No consequences flowed at that point, as the Notice warned plaintiff that it would "become effective as the final administrative decision" only if the company took no action within the thirty-day period to respond. *See id*. at 4 ("WARNING: If you fail to exercise your rights within 30 calendar days . . . this assessment will become a final administrative order enforceable in United States District Court.") (emphasis omitted). So if one accepted defendants' contention that the Violation Notice was the allegedly untimely "commencement" of the action challenged in Counts One and Two, it was not a "consummation" of NOAA's decisionmaking process on plaintiff's case; it was an intermediate notice for which the only "legal or practical effect" was that Western Towboat had to respond. Therefore, the "commencing" by Violation Notice is not reviewable under the APA.

The referral of plaintiff's request for hearing to EPA's Office of Administrative Law Judges is not a final agency action either. It was "interlocutory" in nature in that it had no relation to the agency's ultimate decision on whether Western Towboat violated the law, and it did not affect plaintiff's rights or obligation. At that point, Western Towboat still had the right to

contest the allegations in the administrative proceeding.  As the Court of Appeals has explained

that "[a] procedural ruling – an agency order that a party proceed 'in one fashion rather than

another' – is not a final order" subject to judicial review."  *See Am. Train Dispatchers Assoc. v.

Interstate Com. Comm'n*, 949 F.2d 413, 414 (D.C. Cir. 1991) (agency's decision to refer an

adjudication to arbitration before reviewing the dispute was not final); *Winglet Tech., LLC v.

Fed. Aviation Admin.*, No. 20-1406, 2021 WL 5262568, at *1 (D.C. Cir. Nov. 2, 2021) (an

agency decision to reassign plaintiff's certificate application from one field office to another was

final action because the underlying certification process was "still pending and awaiting the

agency's final resolution"); *Aluminum Co. of Am.*, 790 F.2d at 942 ("[I]f the denial of a

procedural right constitutes final agency action, then the doctrine of finality is indeed an empty

box.").

    This means that if the timeliness claim in Count One is based on the date of the referral,

as plaintiff contends, the claim is still not based on a final action.  This also means that the

second part of Count One, which challenges the referral directly, fails for that reason as well.

    What is left of Count One is plaintiff's attack on NOAA's action of "constituting a

proceeding to assess joint-and-several civil penalties."  Compl. ¶¶ 98–100, 102.  The Violation

Notice "constituted" the proceeding by including the provision that assessed the civil penalty

jointly-and-severally between the four companies, *see* Violation Notice at 4, and for the reasons

stated above, the agency's issuance of a Violation Notice advancing this theory was not a final

agency action.

    The Court notes, though, that the alleged infirmities in the Violation Notice and the

adjudication could be judicially reviewable in the future.  Section 704 of the APA provides that

"preliminary, procedural, or intermediate agency action or ruling not directly reviewable is

subject to review on the review of the final agency action," 5 U.S.C. § 704, and section 706 empowers the court to "hold unlawful and set aside agency action . . . found to be . . . without observance of procedure required by law." *Id.* § 706.  The problem with review at this point is that plaintiff's claims would be obviated if the ALJ were to rule in plaintiff's favor on either procedural or substantive grounds and find that it was not liable for any violation.  *See Aluminum Co. of Am.*, 790 F.2d at 942 (explaining that if the agency resolved the dispute in plaintiff's favor, it "would have no reason to seek review").  And the requirement of finality is meant to prevent "piecemeal appellate consideration of rulings that may fade into insignificance by the time the initial decisionmaker disassociates itself from the matter."  *Id.* (internal quotation marks omitted).

Therefore, because Counts One and Two fail to challenge any final agency action, they will be dismissed.[6]

## II.    The Due Process claim will be dismissed for lack of standing and because it is not ripe for review.

Count Three of the complaint alleges that defendants violated the Due Process Clause by: (1) "constituting a proceeding to assess joint-and-several civil penalties against district corporate persons"; and (2) "severing or removing joint-and-several civil penalty co-Respondents of the Plaintiff."  Compl. ¶¶ 105–07.  Defendants have raised both standing and ripeness issues, arguing that plaintiff has not yet suffered any actual injury, and that it is entirely speculative whether it will suffer any injury.  Defs.' Mot. at 12–13.

---

6    Although defendants raised this issue in a motion for summary judgment, the proper action for the Court to take on the APA claims is dismissal.  *See Soundboard Assoc.*, 888 F.3d at 1263 (holding that the challenged agency action was not final, and vacating the district court's decision with direction to "dismiss the case for failure to state a cause of action under the APA").

Federal courts are courts of limited jurisdiction and possess "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). Article III of the United States Constitution provides that federal courts may hear only justiciable cases or controversies. U.S. Const. Art. III, § 2. This Court is "forbidden . . . from acting beyond [its] authority, and no action of the parties can confer subject-matter jurisdiction upon a federal court." *NetworkIP, LLC v. Fed. Commc'ns Comm'n*, 548 F.3d 116, 120 (D.C. Cir. 2008) (internal quotation marks omitted). So before reaching the merits of a claim, the Court must satisfy itself that the dispute "lies within the constitutional and prudential boundaries of [the court's] jurisdiction." *Ctr. for Biological Diversity v. Dep't of the Interior*, 563 F.3d 466, 475 (D.C. Cir. 2009) (internal quotation marks omitted).

The doctrine of standing considers whether the party seeking to invoke jurisdiction has alleged "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues." *Baker v. Carr*, 369 U.S. 186, 204 (1962). Standing requires the plaintiff to establish that: (1) it has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant; (2) the injury fairly can be traced to the challenged actions; and (3) the injury is likely to be redressed by a favorable decision. *Valley Forge Christian College v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 472 (1982).

"The ripeness doctrine generally deals with when a federal court can or should decide a case." *Am. Petrol. Inst. v. Env't Prot. Admin.*, 683 F.3d 382, 386 (D.C. Cir. 2012). The purpose of ripeness is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies," and to protect "agencies from judicial interference until an administrative decision has been formalized and its

effects felt in a concrete way by the challenging parties." *Sprint Corp. v. Fed. Commc'ns Comm'n*, 331 F.3d 952, 957 (D.C. Cir. 2003) (internal quotation marks omitted). Although ripeness is distinct from standing, it "shares the constitutional requirement . . . that an injury in fact be certainly impending." *Nat'l Treasury Emps. Union v. United States,* 101 F.3d 1423, 1427 (D.C. Cir. 1996); *Am. Petrol. Instit.*, 683 F.3d at 386 ("Part of [ripeness] is subsumed into the Article III requirement of standing, which requires a petitioner to allege . . . an injury-in-fact that is 'imminent' or 'certainly impending'"). Thus, to the extent that a justiciability challenge focuses on the sufficiency or remoteness of the alleged injury, ripeness and standing concerns merge. *See Duke Power Co. v. Carolina Env't Study Groups, Inc.,* 438 U.S. 59, 81 (1978) (concluding that immediate injury sufficient for standing also satisfied ripeness); *Roshan v. Smith*, 615 F. Supp. 901, 904–05 (D.D.C. 1985) (collecting cases holding that standing and ripeness issues merge when the court considers injury-in-fact).

At the outset, the Court notes that plaintiff did not address standing or ripeness at all in its summary judgment pleadings or supplemental briefs, even though, as defendants point out, it "has the burden" of establishing standing. *Scenic Am., Inc. v. U.S. Dep't of Transp.*, 836 F.3d 42, 46 n.3 (D.C. Cir. 2016); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 897 (1990) ("[A] litigant's failure to buttress its position because of confidence in the strength of that position is always indulged at the litigant's own risk."). Defendants raised the jurisdictional issues in its motion for summary judgment, Defs.' Mot. at 11–13, and plaintiff did not respond or otherwise address standing or ripeness in any of its opposition briefs or supplemental briefing.

Count Two alleges that NOAA deprived Western Towboat of due process when it sought a joint-and-several penalty against the four companies, and when having reached a settlement with three of the companies, it severed them from the adjudication. Compl. ¶¶ 105–07. Putting

aside the question of whether either could add up to a constitutional violation, plaintiff has failed to satisfy its initial burden of showing that the agency's actions caused or will imminently cause it injury.

To be sure, plaintiffs "have standing to challenge the failure of an agency to abide by a procedural requirement" during its decisionmaking process. *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996). But even "[a] procedural injury claim . . . must be tethered to some concrete interest adversely affected by the procedural deprivation." *WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013), quoting *Summers v. Earth Island Instit.*, 555 U.S. 488, 496 (2009); *see Summers*, 555 U.S. at 496 ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing.").

For example, in *Still v. United States Department of Labor*, the plaintiff had standing to challenge an agency decision to deny compensation related to her husband's death from cancer. Civ. Action No. 17-1420, 2021 WL 4502053, at *5 (D.D.C. Sept. 30, 2021). A federal law made monetary compensation available for those injured by radiation in Department of Energy facilities, and to recover for her husband, the plaintiff had to file a claim with the agency establishing that his cancer was related to his employment. *Id.* at *1–2. But based on the agency's internal "dose reconstruction" reports, it determined that the husband's cancer did not meet the causation threshold, and it denied the claim. *Id.* at *2–3. The plaintiff sued under the APA challenging the agency's use of "dose reconstruction," and the court determined that she had standing because the dose reconstruction caused her claim to be denied, and "[t]he loss of compensation is a concrete injury." *Id.* at *5.

But here, no concrete interest has been or will imminently be injured as a result of the joint-and-several penalty or the severance because the adjudication has not taken place. Western Towboat would be injured if the ALJ were to find it liable for the entire joint-and-several penalty. But too many alternative pathways stand in the way of that outcome for that injury to be considered "actual" or "imminent." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). The ALJ has no obligation to defer to NOAA's assessment of liability or penalty; indeed, it has the power to grant relief in favor of Western Towboat, to impose a different civil penalty, or impose only a portion of the claimed penalty if it finds the company liable. *See* 15 C.F.R. § 904.204 (describing the "Duties and powers" of the Administrative Law Judge in NOAA enforcement actions).[7] Therefore, because plaintiff's injury-in-fact is speculative at this point, its claim is not ripe, and the Court lacks jurisdiction to hear it.

## CONCLUSION

For the reasons stated above, Counts One and Two will be dismissed for failure to state a claim, and Count Three will be dismissed for lack of subject matter jurisdiction.

AMY BERMAN JACKSON
United States District Judge

DATE: September 26, 2025

---

7 Among other things, the ALJ has "the authority and duty" to "[r]ule on the timeliness of hearing requests," and "[a]ssess a civil penalty . . . taking into account all of the factors required by applicable law." 15 C.F.R. § 904.204(a), (m).